# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

RAMATA A. HILL,

       Plaintiff,

     v.

FULTON COUNTY, et al.,

       Defendants.

:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:08-CV-0001-RWS

## ORDER

This case is before the Court on Defendants' Motion for Summary Judgment [16] and Plaintiff's Motion for Summary Judgment [17].  After considering the entire record, the Court enters the following Order.

### Background[1]

On October 5, 2001, Mr. Fidel Cruz reported his 1993 Ford Escort vehicle stolen to the Cobb County Police Department.  On October 19, 2001, Officers Owens and O'Hare from the Atlanta Police Department observed a

---

[1] The Court makes no findings with regard to the facts as stated herein, which are drawn from both parties' Statements of Undisputed Material Facts.

man driving a 1993 Ford Escort at a high rate of speed.  When the officers

checked the vehicle's tag, they learned that it had been reported stolen by Mr.

Cruz.

The Atlanta Police Officers stopped the vehicle, realized that the driver

did not have a license, and arrested him.  He was charged with the felony state

offense of theft by receiving a stolen automobile in violation of O.C.G.A. § 16-

8-7, as well as driving without a license in violation of O.C.G.A. § 40-5-20(a).

The driver told the officers that his name was Ramata Hill.  The Atlanta

Police Department's Traffic Citation and Accusation charge sheet notes that he

was a Black man with black hair and brown eyes weighing one hundred

seventy-five pounds and standing six feet in height.  The Atlanta Police also

noted that he was born in 1972.  The man was released on bond on or about

October 22, 2001 and was not detained at the Fulton County Jail.

On July 11, 2002, the Clerk of Fulton County Superior Court issued a

calendar notice informing Hill that his criminal case was to be set on a July 29,

2002 plea and arraignment calendar before Judge Jenrette.  Hill failed to appear

at his hearing, so Superior Court Judge Gino Brogdon issued a Rule Nisi Order

for a Bond Judgment Hearing on December 2, 2002 against Ramata Hill and Astro Bail Bonding Company, which had provided his bond.

On September 4, 2002, Fulton County issued a bench warrant against Hill for his October 2001 charge of theft by receiving a stolen automobile. The warrant was signed by Judge Brogdon, and it described Hill as a Black male with black hair and brown eyes, weighing one hundred seventy-five pounds and measuring six feet tall. The warrant further listed his social security number. On December 12, Hill failed to appear, and Judge Brogdon placed Hill's case on the Administrative Dead Docket pursuant to O.C.G.A. § 15-6-61.

On May 25, 2004, Plaintiff was stopped for an improper signal by Georgia State Patrol officers. Upon investigation, the officers discovered that there was a valid Fulton County bench warrant issued against Ramata Hill. Plaintiff was subsequently arrested and placed in the Morgan County Jail.

Several days later, Sergeant Teasley from the Fulton County Sheriff's Office transported Plaintiff to the Fulton County Jail. Fulton County Sheriff's Office Transport documents appear to exactly match Hill's full name, sex, race, date of birth, social security number, and weight as it appears on the bench

3

warrant. The only difference is Hill's height information, which is listed as six feet on the warrant but five feet ten inches on the transport documents.

On June 25, 2004, Judge Brogdon ordered Hill's release because investigation revealed that Hill was not the person arrested in October 2001. Instead, it appears that Hill's brother had been the individual arrested at that time and that he had given the arresting officers Hill's name, social security number, and other identifying information instead of using his own.

Plaintiff has brought suit against Fulton County, Georgia, John H. Eaves in his official capacity as Chair of the Fulton County Board of Commissioners, Jacqeline Barrett, individually and in her official capacity as former Sheriff of Fulton County, Myron Freeman, individually and in his official capacity as Sheriff of Fulton County, and John and Jane Doe(s), administrators and deputies of the Fulton County Sheriff's Department and/or Fulton County in their individual and official capacities. Plaintiff and Defendants have both moved for summary judgment.

AO 72A
(Rev.8/82)

**Analysis**

**I. Defendants' Motion for Summary Judgment**

A. Standard of Review

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted)). Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The applicable substantive law

AO 72A
(Rev.8/82)

identifies which facts are material.  Id. at 248.  A fact is not material if a dispute over that fact will not affect the outcome of the suit under the governing law. Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 249-50.

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (stating that once the moving party has met its burden under Rule 56(c), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material

facts"). With this standard as a foundation, the Court turns to address the merits of Defendants' Motion for Summary Judgment [16].

B. Parties and Claims Remaining in the Case

As a preliminary matter, the Court shall address the issue of which parties remain in the case. In his Brief in Response to Defendants' Motion for Summary Judgment [27], Plaintiff concedes that the only Defendant against whom Plaintiff seeks damages through a § 1983 claim is Sheriff Barrett in her individual capacity. For this reason, all other § 1983 claims for damages in the case are hereby **DISMISSED**.

Plaintiff also concedes that Sheriff Freeman is the sole party against whom Plaintiff maintains an action in his official capacity, seeking injunctive relief. For this reason, all other such claims are hereby **DISMISSED**.

Furthermore, Plaintiff initially brought suit against John and Jane Doe Defendants in this case who have still yet to be named. It is well-established that replacing "John Doe" defendants with specifically-named defendants constitutes a change in the parties sued and does not relate back to the date of the initial Complaint pursuant to Fed. R. Civ. P 15(c). See Wayne v. Jarvis, 197 F.3d 1098, 1102-03 (11th Cir. 1999) (citing Barrow v. Wethersfield Police

7

Dep't, 66 F.3d 466, 468 (2d Cir. 1995) (finding "it is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations because replacing a 'John Doe' with a named party in effect constitutes a change in the party sued.") (other citations omitted); see also, Danhi v. Charlotte County Sheriff's Dep't, 2006 WL 2226323 *3-4 (M.D. Fla. 2006) (dismissing John Doe defendants *sua sponte* when the four-year statute of limitations had run and the claims were time barred).  Lack of knowledge regarding the identities of John Doe Defendants does not constitute "a mistake concerning the identity of the proper party."  Wayne, 197 F.3d at 1103.  Section 1983 has a two-year statute of limitations, which has certainly expired in this case.  For this reason, all claims against John and Jane Doe Defendants are hereby **DISMISSED**.

Furthermore, pursuant to Federal Rule of Civil Procedure 4(m), a district court may dismiss an action *sua sponte* if service is not effected within 120 days of filing the complaint.  FED. R. CIV. P. 4(m).  For this additional reason, all claims against John and Jane Doe Defendants in this case are hereby **DISMISSED**.

AO 72A
(Rev.8/82)

C. Section 1983 Claim

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983.  Section 1983 provides a cause of action for persons who have been "deprive[d] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person or entity acting under color of law.  42 U.S.C. § 1983.

Plaintiff has brought official capacity claims against both Freeman and Barrett.  Plaintiff seeks only injunctive relief from Defendant Freeman.  As a preliminary matter, the Court concludes that Plaintiff cannot attain the injunctive relief he seeks.

District courts may grant preliminary injunctive relief if the movant shows the following: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the damage the injunction would cause the non-movant; and (4) the injunction would not be adverse to the public interest.  Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A. , 320 F.3d 1205,1210 (11th Cir. 2003); McDonald's Corp. v. Robertson , 147 F.3d 1301, 1306 (11th Cir. 1996). The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the movant must

9

show actual success on the merits instead of a likelihood of success on the merits. <u>Siegel v. Lepore</u>, 234 F.3d 1163, 1213 (11th Cir. 2000). The movant must demonstrate irreparable injury and the absence of an adequate remedy at law. <u>Id.</u>

However, actions seeking declaratory or injunctive relief to remedy allegedly ongoing violations of rights become moot when there is a change in the plaintiff's circumstances, as, for example, where a prisoner who seeks a remedy for the conditions of his confinement is released from confinement. <u>See, e.g.,</u> <u>Green v. Branson,</u> 108 F.3d 1296 (10th Cir. 1997). Because Plaintiff is no longer in jail, he lacks standing to bring a suit for equitable relief with regard to any conditions of Fulton County Jail or to any procedures or policies in place at that facility. For this reason, Plaintiff's request for injunctive relief is **DENIED as moot**.

Plaintiff's official capacity claim against Barrett, however, seeks more than mere injunctive relief. An official capacity suit against an officer generally is "another way of pleading an action against an entity of which [the] officer is an agent," and it has been said that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the [governmental] entity."

Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). Therefore, Plaintiff's official capacity claims against Defendants Eaves, Freeman, and Barrett shall be treated as claims against Fulton County.

An action asserted under § 1983 must arise from a deprivation of an identifiable, clearly established right secured by the United States Constitution. Accordingly, the threshold consideration is whether Plaintiff indicates a legitimate constitutional right as a basis for his § 1983 action. Procunier v. Navarette, 434 U.S. 555 (1978). Here, Hill alleges that Defendants violated his rights protected by the Fourth, Fifth, and Fourteenth Amendments because they deprived him of his right to be free from arrest and confinement without due process of law. In his Complaint, Hill alleges Defendants caused his arrest in violation of the Fourth Amendment and that their policies and customs caused his prolonged detention in violation of his constitutional rights. The central conduct at issue here is Defendants' actions in transporting and confining Plaintiff to the Fulton County Jail.[2]

_____

[2]To the extent that Plaintiff's Complaint alleges a violation of his Constitutional rights because he was strip-searched upon arrival at the Fulton County Jail, it is clear from the existing law of the Eleventh Circuit that this is not a constitutional violation. See generally Powell v. Barrett, 541 F.3d 1298 (11th Cir. 2008) (holding that a policy or practice of strip searching all arrestees as part of

The Eleventh Circuit has adopted a "reasonable mistake" standard to evaluate a § 1983 claim "when police have a valid warrant - as opposed to just probable cause - to arrest someone, but mistakenly arrest someone else due to a misidentification." Rodriguez v. Farrell, 280 F.3d 1341, 1346 (11th Cir. 2002). To determine whether a misidentification arrest resulted from a reasonable mistake, the Court must evaluate the totality of the circumstances surrounding the arrest. Id. at 1347.

Here, the identifying information described in Judge Brogdon's September 2002 bench warrant matched Hill's identifying information in nearly every single respect. The full names, dates of birth, and Social Security numbers were identical. Furthermore, the physical description was strikingly similar to Hill's physical appearance. Hill's transport documents and the bench warrant note that Hill was a Black male weighing one hundred seventy-five pounds with brown eyes and black hair. The sole difference was Hill's height - on the bench warrant listed as six feet, but on the transport documents listed as five feet ten inches.

---

booking them into the general population of a detention facility, even without reasonable suspicion that they may be concealing contraband, is constitutionally permissible).

Plaintiff's Complaint does not appear to question the validity of the warrant. While the Fulton County Sheriff is charged with accepting custody of individuals with valid warrants into the Fulton County Jail, he does not have the power to change or withdraw a valid bench warrant. The Sheriff may only release an individual confined at the Fulton County Jail without a Court Order if the Sheriff's Office possesses definitive proof that the confined individual is not the individual named in the warrant. No evidence of mistaken identity existed when Hill was transported to the Jail.

As the Eleventh Circuit has stated, a reasonable mistake cannot "be transformed into an unreasonable mistake over such a small difference, given all the circumstances." Rodriguez, 280 F.3d at 1347-48. Here, Defendants' actions fall squarely within the "reasonable mistake" standard. As noted by the Supreme Court, "[t]he Constitution does not guarantee that only the guilty will be arrested . . ." Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689 (1979). The Court concludes that Defendants' actions do not rise to the level of a constitutional violation.

AO 72A
(Rev.8/82)

Furthermore, to impose § 1983 liability on a county, as Hill seeks to do here, a plaintiff must show not only that his constitutional rights were violated, but also that (a) the county had a custom or policy that constituted deliberate indifference to that constitutional rights, and that (b) the county's policy or custom caused the violation.  <u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S.Ct. 1197 (1999).

Even if Plaintiff could show that his constitutional rights were violated, his claim against Barrett would still fail because he cannot show that she had a policy or custom that constituted deliberate indifference to that constitutional right, leading to the alleged violation.  "Congress did not intend [for] municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights."  <u>Board of County Commissioners v. Brown</u>, 520 U.S. 397, 415 (1997).  Thus, "[i]t is only when 'the execution of the government's policy or custom . . . infects the injury' that the municipality may be held liable."  <u>Springfield v. Kibbe</u>, 480 U.S. 257, 267, 107 S.Ct. 1114, 1119 (1987).  This policy ensures that a county or municipality is held liable only for those deprivations resulting from the deliberate legislative decisions and demonstrated practices of the county or municipality, and not for

14

an isolated incident. <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). Unless the county's policy itself is unconstitutional, considerably more proof than a single incident is necessary in order to establish this type of claim. <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469 (1986); <u>Williams v. City of Albany</u>, 936 F.2d 1256, 1261 (11th Cir. 1991).

Here, Plaintiff contends that Defendant Barrett promulgated procedures and policies of an unconstitutionally negligent record-keeping system that was indifferent to exculpatory information that might lead to release of innocent prisoners in a timely manner. Plaintiff has failed to specifically identify these policies, customs, or practices. Further, to establish a constitutional violation based on over-detention, Plaintiff "must show that Defendants acted with deliberate indifference to Plaintiff's due process rights." <u>West v. Tillman</u>, 496 F.3d 1321, 1327 (11th Cir. 2007). Plaintiff has failed to make such a showing. Without further facts supporting Plaintiff's theory, his official capacity claim against Defendant Barrett is due to be **DISMISSED**.

<u>C. Qualified Immunity</u>

Plaintiff also asserts a claims against Barrett in her individual capacity. Even if Plaintiff could allege a constitutional violation, Defendants' actions are

15

protected by qualified immunity. Qualified immunity provides "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Its purpose is to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted).

Qualified immunity is a question of law for the court. Post v. City of Fort Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993). To be entitled to qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee, 284 F.3d at 1194. Plaintiff does not appear to contest the fact that Defendants were acting within the scope of their discretionary authority in this case.

The burden then shifts to the plaintiff. Lee, 284 F.3d at 1194. In this regard, there is a two-part test to determine whether a defendant is entitled to qualified immunity. First, a court asks "'whether [the] plaintiff's allegations, if true, establish a constitutional violation.'" Vinyard, 311 F.3d at 1346 (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Where the issue of qualified immunity is presented on summary judgment, the Court resolves all disputed facts in favor of the plaintiff, and it decides whether the supposed facts amount to a violation of the plaintiff's constitutional rights. Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1320 (11th Cir. 2005). As discussed above, the Court can find no constitutional violation in this case.

Second, if a constitutional violation is sufficiently stated, a court must ask whether the right was "clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). A right is clearly established if its contours are "sufficiently clear that a reasonable official would understand what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). The salient question is whether the state of the law at the time of the alleged violation gave officials "fair

17

warning" that their acts were unlawful.  Hope, 536 U.S. at 740 ; Holmes v.

Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at

1350-53 (articulating a tripartite analytical framework for ascertaining whether

right is "clearly established").

While materially similar precedent or "broad statements of principle" can

establish a right with sufficient clarity to deny an officer qualified immunity,

this is not required in all instances to provide officials with the requisite notice.

See Vinyard, 311 F.3d at 1350-52.  In some cases, "the words of a federal

statute or federal constitutional provision may be so clear and the conduct so

bad that case law is not needed to establish that the conduct cannot be lawful."

Id. at 1350.

Here, the law is well-established that Defendants' conduct is not a

constitutional violation.  See, e.g., Baker v. McCollan, 443 U.S. 137 (1979)

(holding that a detention pursuant to a valid warrant due to mistaken identity

does not constitute a deprivation of constitutional rights).  Therefore, Plaintiff

has failed to overcome Defendants' entitlement to qualified immunity in this

matter, and his individual capacity claims are due to be **DISMISSED**.

D. Respondeat Superior and Sovereign Immunity

AO 72A
(Rev.8/82)

Plaintiff alleges that Barrett is responsible for alleged ministerial acts of deputies in preventing Plaintiff's arrest and wrongful detainment. In doing so, Plaintiff alleges an implied respondeat superior claim against Barrett. Under the doctrine of respondeat superior, an employer is responsible for its employee's torts only when committed while acting within the scope of employment and while engaged in the employer's business. Brown v. Who's Three, 217 Ga. App. 131, 132, 457 S.E.2d 186 (1995). See also, O.C.G.A. § 51-2-2. "A county may be liable for a county employee's negligence in performing an official function to the extent the county has waived sovereign immunity." Gilbert v. Richardson, 264 Ga. 744, 754, 452 S.E.2d 476 (1994).

As sheriff, Barrett enjoys protection from official capacity claims because she is protected by Eleventh Amendment immunity. The Eleventh Circuit held in Purcell ex rel. Estate of Morgan v. Toombs County, 400 F.3d 1313 (11th Cir. 2005), that:

> [In Manders,] we decided that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." Thus Manders controls our determination here; [the sheriff] functions as an arm of the State--not [the] County--when promulgating policies and procedures governing conditions of confinement at the [ ] County Jail. Accordingly, even if [the plaintiff] had established a

19

> constitutional violation, [the sheriff] would be entitled to
> Eleventh Amendment immunity from suit in his official
> capacity.

Id. at 1325.  Therefore, as sheriff, Barrett is protected from any official capacity claims.

Furthermore, in order to be held liable for respondeat superior liability, there has to be evidence that the employer had an employee who had a duty to act but failed to do so, leading to the injury at issue.  Id. at 754.  As Plaintiff has failed to provide any evidence that Barrett had a duty to prevent Plaintiff's arrest and release him from custody, Plaintiff's implied claim of respondeat superior liability fails and is due to be **DISMISSED**.

E. State Law Claims Barred by Official Immunity

Plaintiff also references state law claims against Barrett in his Complaint. Governmental employees, like Barrett, who are sued in their individual capacities for discretionary acts performed within the scope of their employment generally are entitled to official immunity. Ga. Const. Art. l, § 2, Par. 9(d).  As Georgia Courts have explained,

> "[a] discretionary act calls for the exercise of personal
> deliberation and judgment, which in turn entails examining
> the facts, reaching reasoned conclusions, and acting on them

> in a way not specifically directed. Procedures or instructions
> adequate to cause an act to become merely ministerial must
> be so clear, definite and certain as merely to require the
> execution of a relatively simple, specific duty."

Happoldt v. Kutscher, 256 Ga. App. 96, 98, (2002). The rationale for the

constitutional doctrine of official immunity is "to preserve the public

employee's independence of action without fear of lawsuits and to prevent a

review of his or her judgment in hindsight." Standard v. Hobbs, 263 Ga. App.

873, 876 (2003). Furthermore, to hurdle the bar of official immunity, the

Georgia Constitution requires that Plaintiff must establish that the ministerial

acts were performed negligently and with actual malice and intent to injure. Ga.

Const. Art. 1, § 2, Par. 9(d).

Here, Plaintiff has not alleged any actual malice of Barrett towards

Plaintiff, or any intent to injure Plaintiff. Even when the officer's decision is

flawed, no liability attaches to an officer's exercise of his lawful discretion,

absent malice or intent to injure. Touchton v. Bramble, 284 Ga. App. 164, 167

(2007) (failure of Sheriff's Department Detective to take further investigative

steps did not strip him of his immunity).

21

In the context of official immunity for government officials, the question of whether a duty is ministerial or discretionary turns on the character of the specific act, not the general nature of the official's position. <u>Daley v. Clark</u>, 282 Ga. App. 235, 238 (2006). Plaintiff's Complaint and subsequent summary judgment motion fails to directly connect Barrett to any specific ministerial acts, but instead vaguely appears to attribute certain acts to Barrett merely because of her position as Sheriff. In fact, Plaintiff fails to identify any specific acts on Barrett's part that could be classified as ministerial.

The Court concludes that Barrett's actions were discretionary in this case. Georgia Courts have recognized that personal judgment, deliberation and discretion are an inherent part of the day-to day jobs of law enforcement officers. <u>Touchton</u>, 284 Ga. App. at 167 (holding that official immunity protects discretion in making an arrest); <u>Daley</u>, 282 Ga. App. at 238 (holding that official immunity protects discretion in whether to perform CPR); <u>Hanse v. Phillips</u>, 276 Ga. App. 558, 561-62 (2005) (holding that official immunity protects discretion in whether to pursue suspect and applies even if laws are broken and departmental rules are violated).

AO 72A
(Rev.8/82)

For all of these reasons, Plaintiff fails to pierce Barrett's official immunity, and therefore the remaining claims against her are hereby **DISMISSED**.

## II. Plaintiff's Motion for Summary Judgment

Because the Court has granted Defendant's Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment [17] is **DENIED as moot**.

## Conclusion

In conclusion, Defendants' Motion for Summary Judgment [16] is hereby **GRANTED**, and Plaintiff's Motion for Summary Judgment [17] is hereby **DENIED as moot**.

**SO ORDERED**, this  14th  day of August, 2009.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)